PETERSON, Judge.
Edward James Webber, Jr., appeals his conviction and sentence after having been found guilty by a jury of dealing in stolen property. He asserts he is entitled to a new trial because the jury learned of alleged collateral crimes from a state witness. He also argues the trial court should have granted his motion for acquittal and that because the trial court was presented with an improperly *259 calculated scoresheet, its imposition of a 25 year habitual offender sentence should be reversed.
The victim testified that after her home was burglarized she could not locate her purse containing, among other items, credit cards and some unpaid bills and envelopes to mail the bills. Ultimately, Webber was arrested as a result of information received by the police from Webber’s brother, a confidential informant.
Webber was coaxed by an undercover police officer over the course of three phone conversations; to meet at a gas station for the purpose of selling the credit cards. As Webber approached the gas station with the credit cards, he became suspicious and began walking away, but a police officer decided to stop Webber immediately. The victim’s purse was later found in some bushes approximately 50 to 75 yards from Webber’s home. His fingerprint was found on a bill envelope recovered from the victim’s purse.
During the trial, the prosecutor questioned the police officer who coaxed Webber out of his home to sell the credit cards:
Q. Were you aware of any problems between the Webber brothers in the past?
A. Yes, sir, we had received a couple of different complaints and information back and forth — accusing Edward [the appellant] of stealing from his brothers.
Q. Okay. So you were just aware— [Defense Attorney]. Objection, Your Hon- or.
The judge immediately held a sidebar conference in which the court admonished the prosecutor for failing to tell the witness, prior to testifying, that collateral crimes were not to be discussed. The judge further gave a curative instruction to the jury regarding the alleged collateral crime. Although we agree with Webber that eliciting the evidence of collateral crimes was improper, we find that there was no reasonable possibility that the error affected the jury’s verdict. Ciccarelli v. State, 531 So.2d 129 (Fla.1988); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Webber also argues that he cannot be convicted of the crime of dealing in stolen property under section 812.019, Florida Statutes (1995), because he carried out no actual sale of the stolen credit cards, and that there could be no attempt to sell until he faced a buyer and began to exchange cards for cash. Even though no actual sale took place, we still find Webber was properly convicted of dealing in stolen property, because this crime, like theft, includes within its definition the attempt and there was substantial and competent evidence that Webber attempted to deal in stolen property.
An attempt to commit a crime, as opposed to mere preparation, occurs when an appreciable fragment of the crime has been committed and the acts of the perpetrator have proceeded “to the point that the crime would be consummated unless interrupted by a circumstance independent of the attemp-ter’s will.” State v. Coker, 452 So.2d 1135 (Fla. 2d DCA 1984). An attempt consists of two essential elements, a specific intent to commit the crime and an overt act beyond mere preparation done toward its commission. Id. In the instant case, the specific intent to commit the crime can be inferred from the phone conversations between the officer and Webber, in which the latter agreed to sell the credit cards. The overt act beyond mere preparation is Webber’s arrival at or in the vicinity of the gas station, shortly after the appointed time, with the credit cards in his possession. The circumstance which thwarted Webber’s will to complete the transaction was his suspicion that he had been set up and that the police might be involved. Such an involuntary abandonment provides no defense for Webber. See Carroll v. State, 680 So.2d 1065 (Fla. 3d DCA 1996) (if a defendant withdraws because he thinks his plan would be thwarted by the police, such is an involuntary abandonment, not the defense of abandonment which must be complete and voluntary).
As for Webber’s sentencing issue, the state concedes that Webber’s sentencing scoresheet improperly reflected a prior conviction for robbery with a deadly weapon. Webber had been charged with that crime at one time, but the charge resulted in a conviction of burglary of an unoccupied structure, a crime for which less points are assessed. *260 Webber’s scoresheet was reviewed by the trial court and reflected a total of 41.8 points; the correct total should have been 20.4. This error, however, did not draw a defense objection and was not otherwise properly preserved for review. Maddox v. State, 708 So.2d 617 (Fla. 5th DCA 1998). Moreover, Webber was not sentenced according to the guidelines but was habitualized.
We affirm the conviction and sentence.
AFFIRMED.
GRIFFIN, C.J., and GOSHORN, J., concur.